**Joseph F. and Donna MLADY,**
Appellants,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. WD 61449.

Missouri Court of Appeals,
Western District.

Jan. 7, 2003.

Harry Charles, St. Louis, MO, for Appellants.

Alana M. Barragan–Scott, Jeremiah W. (Jay) Nixon, Atty. Gen., Sarah Ledgerwood, Jefferson City, MO, for Respondent.

Before ROBERT G. ULRICH, P.J., HAROLD LOWENSTEIN and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, P.J.

Joseph and Donna Mlady appeal the decision of the Administrative Hearing Commission (AHC) concluding that the Mladys were Missouri residents in 1996 for purposes of Missouri income tax. The decision of the AHC is affirmed.

The facts in this case are undisputed. Joseph Mlady is a construction engineer who is assigned to various job sites around the world. Donna Mlady is a homemaker. The Mladys lived with their children in Missouri briefly in 1984. They built a home in St. Charles, Missouri, and moved their family into the house in April 1988. They chose that area because Mrs. Mlady is from Granite City, Illinois, and her mother still lived there. Mr. Mlady also obtained a Missouri driver's license in 1988. The Mladys owned the home in St. Charles until 2000.

Since building the house, Mr. Mlady has traveled to different sites around the world and has never stayed in the house in Missouri for more than two weeks at a time. From 1990 through 1993, Mr. Mlady worked in Texas, and his family leased a house there. From 1993 through 1995, the family lived in Baton Rouge, Louisiana, while Mr. Mlady was on a job assignment in that area. In 1995, the family moved back to the house in Missouri because Mrs. Mlady's mother was seriously ill. The Mladys three children began school in Missouri.

In April 1995, Mr. Mlady began a job assignment in Canada with Bechtel. The assignment was for an indefinite period of time. He worked first in Toronto, and then from September 1995 through May 1996, he worked and leased an apartment in Montreal. In June 1996, Mr. Mlady transferred to a remote campsite in the Arctic in the province of Quebec. From October 1996 through December 1997, he was in Quebec City, the remote campsite, and Montreal at various times. Mr. Mlady did not spend more than thirty days in Missouri in 1996. Mr. Mlady left Quebec for St. Charles on December 3, 1997.

According to the conditions of employment, Mr. Mlady's assignment in Canada was temporary. Specifically, the conditions of employment stated, "An employee's point of origin is the geographic location where he or she has a permanent residence, or to where an employee intends to return following the completion of a field assignment."

On December 5, 1997, Mr. Mlady left St. Charles for a job site in Indonesia. He then transferred to a job site in Australia in February 1998. Mr. Mlady renewed his Missouri driver's license in December 1998 using the St. Charles address. The Mladys also purchased a vehicle and licensed it in Missouri in September 1999.

The Mladys sold their home in St. Charles on July 26, 2000. Mrs. Mlady and

the Mladys' youngest child have moved to Australia.

The Mladys timely filed a 1996 Missouri income tax return reporting a balance due of $49, which they paid. They claimed a resident credit. Thereafter, the Director of Revenue sent a billing notice disallowing the resident credit. The Mladys filed an amended return reporting a balance due of $3,480, which they paid. Two months later, based on the advice of their tax professional, the Mladys filed a second amended return reporting a federal adjusted gross income of $82,864 and a Missouri income percentage of zero. They reported a Missouri income tax of zero and claimed a refund of $3,529. The Director responded with a notice of adjustment increasing the Mladys' federal adjusted income, adjusting their Missouri income percentage, and issuing a refund of $3,837 plus interest. In early 2000, the Director issued a billing notice increasing the Missouri income percentage to 100%. It also issued a notice of deficiency in the amount of $10,862 including tax, additions, and interest. The Mladys protested the notice of deficiency.

On April 6, 2001, the Director issued a final decision determining that Mr. Mlady was a Missouri resident in 1996 but decreasing his adjusted gross income to match the amount reported on his federal income tax return. The Director also determined that the Mladys were liable for Missouri income tax, additions, and interest in the amount of $5,734. The AHC issued its decision on March 29, 2002, concluding that Mr. Mlady was a Missouri resident in 1996 and that the Mladys are liable for $4,490.98 in Missouri income tax, plus interest. The Mladys timely filed a petition for review in the Missouri Supreme Court. The case was then transferred to this court.

In their two points on appeal, the Mladys claim that the AHC erred in upholding the final decision of the Director of Revenue finding that Mr. Mlady was a resident of Missouri in 1996 and assessing the Mladys Missouri income tax and interest for that year. They contend that the ruling was contrary to section 143.101.1, RSMo 2000, and the federal Internal Revenue Code and related regulations.

The decision of the AHC must be upheld when authorized by law and supported by competent and substantial evidence upon the whole record unless the result is clearly contrary to the reasonable expectations of the General Assembly. § 621.193, RSMo 2000; *Westrope & Assocs. v. Dir. of Revenue*, 57 S.W.3d 880, 882 (Mo.App. W.D.2001). Where the decision of the AHC involves the interpretation or application of law, or the pertinent facts are undisputed between the parties, the reviewing court independently reviews the matter as a question of law. *Westrope*, 57 S.W.3d at 882; *Mo. Ethics Comm'n v. Thomas*, 956 S.W.2d 456, 457 (Mo.App. W.D.1997).

Section 143.011, RSMo 2000, provides, in relevant part, "A tax is hereby imposed for every taxable year on the Missouri taxable income of every resident." Section 143.101.1, RSMo 2000, defines resident as:

an individual who is domiciled in this state, unless he (1) maintains no permanent place of abode in this state, (2) does maintain a permanent place of abode elsewhere, and (3) spends in the aggregate not more than thirty days of the taxable year in this state; or who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than one hundred eighty-three days of the taxable year in this state.

This court discussed the term domicile as it applied in the definition of resident in section 143.101.1 in *Paulson v. Missouri*

*Department of Revenue*, 961 S.W.2d 63, 66 (Mo.App. W.D.1998). A domicile is that place where a person has his true, fixed, and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning. *Id.* "A person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead." *Id.* (quoting *In re Estate of Toler*, 325 S.W.2d 755, 759 (Mo.1959)). In determining whether a person has the intent to remain at a place either permanently or for an indefinite period of time, a court should consider the declarations of the person and the acts done before, at, and after the time the domicile is in dispute. *Id.* For a person to change his domicile, he must be present in a new domicile and have the present intent to remain there indefinitely and make that location his permanent address. *Id.*

■ In point one, the Mladys argue that because they obtained a foreign earned income exclusion on their federal income taxes under the Internal Revenue Code,[1] the federal tax law definition of domicile applied in this case rather than the definition of resident in section 143.101.1 and the *Paulson* case. The Mladys cite section 143.091, RSMo 2000, in support of this argument.

Section 143.091, provides, in pertinent part, "Any term used in sections 143.011 to 143.996 shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required by the provision of sections 143.011 to 143.996." The Mladys argue that the definitions of resident and domicile in 26 C.F.R. § 20.0–1(b) apply in this case. The federal regulation defines the term resident for the purpose of taxa-

tion of the estate of a person who was a citizen or a resident of the United States at the time of his death. 26 C.F.R. § 20.0–1(b) (2002). Under the regulation, a resident decedent is "a decedent who, at the time of his death, had his domicile in the United States." *Id.* The regulation then explains the term domicile:

A person acquires a domicile in a place by living there, for even a brief period of time, with no definite present intention of later removing therefrom. Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile, nor will intention to change domicile affect such a change unless accompanied by actual removal.

*Id.*

By its express terms, section 143.091 does not apply if Chapter 143 provides a definition of a term. § 143.091, RSMo 2000; *Herschend v. Dir. of Revenue*, 896 S.W.2d 458, 459 (Mo. banc 1995). As stated above, section 143.101.1 specifically defines resident. Reference to federal law for a definition of resident is, therefore, unnecessary. *Herschend*, 896 S.W.2d at 459.

■ Likewise, section 143.091 does not require reference to the Internal Revenue Code and its regulations for a definition of the term domicile, as argued by the Mladys, although Chapter 143 does not specifically provide a definition for the term. Section 143.091 states that a term used in Chapter 143 "shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes...." The term domicile cited by the Mladys in the federal regulation is not comparable to the term in this case. In this case, the term domicile is used in the context of defining whether a

---

1. Under 26 U.S.C. § 911(a) (1999), a qualified individual may exclude from his gross income, and exempt from taxation, foreign earned income.

person is a resident of the State of Missouri for the purpose of imposing Missouri income taxes. The regulation cited by the Mladys applies for the purpose of determining whether an individual is a resident of the United States for estate tax purposes. 26 C.F.R. § 1.871–2(c) (2002); 26 C.F.R. § 20.0–1(a) and (b) (2002). The terms are not used in comparable contexts, therefore, the statutory directive of section 143.091 that any term used in state income tax statutes have the same meaning as when used in federal income tax laws does not apply. Instead, the analysis of *Paulson* is applicable.

■ Mr. Mlady argues that he was not domiciled in Missouri in 1996 or any other time because he never had the intention of remaining here indefinitely. Instead, he argues that his intent was to move wherever his company assigned him, specifically Canada in 1996. The facts of this case show, however, that in 1996, Missouri was the place where Mr. Mlady had his "true, fixed, and permanent home and principal establishment" to which, whenever he was absent, he had the intention of returning. The Mladys built a home in St. Charles in 1988. Mr. Mlady also obtained a Missouri driver's license that year. Although the Mladys lived in Texas and Louisiana from 1990 to 1995 while Mr. Mlady was on job assignments in the areas, the family moved back to their house in St. Charles in 1995. Mr. Mlady then was assigned to a job in Canada; however, he did not change his domicile from Missouri to Canada. Mr. Mlady's actions before, during, and after 1996 showed that he did not have the present intent to remain in Canada indefinitely and to make that location his

permanent address. Mrs. Mlady and the Mlady's children remained in Missouri residing in the house in St. Charles, and the children attended school here. Although Mr. Mlady did not spend more than thirty days in Missouri in 1996, he did return to St. Charles at various times including when his assignment in Canada ended. Mr. Mlady continued to possess his Missouri driver's license in 1996, and the Mladys filed a combined federal tax return in 1996 listing the St. Charles address. After returning from Canada, Mr. Mlady was assigned to a job in Indonesia and then to a job in Australia. He renewed his Missouri driver's license in 1998 using his St. Charles address, and the Mladys purchased an automobile and licensed it in Missouri in 1999. Additionally, the conditions of employment of Mr. Mlady's job in Canada specifically stated that his point of origin was the geographic location where he has a permanent address or to where he intends to return following completion of the job. The conditions also described the Canada assignment as a temporary assignment for an indefinite period of time. Mr. Mlady never renounced Missouri as his domicile and took up another domicile in its stead. Mr. Mlady was, therefore, domiciled in Missouri in 1996.[2] Point one is denied.

■ In point two, the Mladys contend that even if Mr. Mlady was domiciled in Missouri in 1996, he met the three prong exception to resident status in section 143.101.1 in that he (1) maintained no permanent place of abode in this state, (2) did maintain a permanent place of abode elsewhere, and (3) spent in the aggregate not

2. Even if the definition of domicile in 26 C.F.R. § 20.0–1(b) were applicable in this case as argued by the Mladys, Mr. Mlady did not establish a domicile in Canada in 1996. Like Missouri law, this regulation looks to intent to remain indefinitely. As discussed

above, the evidence revealed that Mr. Mlady did not have the present intent to remain in Canada indefinitely and to make that location or any other location other than St. Charles his permanent address.

more than thirty days of the taxable year in this state. Specifically, the Mladys argue that Mr. Mlady could not have had a Missouri abode and at the same time enjoy the federal foreign earned income exclusion.

For purposes of the federal foreign earned income exclusion, a qualified individual is defined in 26 U.S.C. § 911(d)(1) as an individual whose tax home is in a foreign country and who is a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. The term tax home is explained in 26 C.F.R. § 1.911–2(b):

> [A]n individual's tax home is considered to be located at this regular or principal (if more than one regular) place of business. . . . An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. . . .

The Mladys argue that in order to be a qualified individual under section 911 of the Internal Revenue Code, Mr. Mlady's tax home could not have been in the United States in 1996. In granting the Mladys an exclusion in 1996 for foreign earned income, the federal government necessarily recognized that Mr. Mlady had a tax home in Canada. The federal government's recognition of Mr. Mlady's Canadian tax home, however, does not determine Mr. Mlady's abode for purposes of his resident status and Missouri income tax liability. First, the Mladys cite no authority supporting this argument. Secondly, as discussed in point one, Missouri statutes clearly impose a tax on the Missouri taxable income of every resident. § 143.011, RSMo 2000. Section 143.101.1 specifically defines the term resident. Although the term abode is not defined in Chapter 143,

it is also not defined in the federal regulation cited by the Mladys. Additionally, the term tax home in 26 C.F.R. § 1.911–2(b) is not used in a comparable context to the term abode in section 143.101.1. Referral to the federal regulation for the meaning of abode as used in section 143.101.1 is, thus, not required by section 143.091. The purpose of section 143.091, which mandates that any term used in the state income tax statute have the same meaning as when used in federal income tax laws, is merely to save state law the necessity of defining terms already defined in federal law. *Garland v. Dir. of Revenue*, 961 S.W.2d 824, 828 (Mo. banc 1998).

■ Furthermore, the Mladys' argument that their receipt of the federal foreign earned income exclusion also precludes them from payment of *any* Missouri income tax is illogical. In this case, the Mladys were allowed to exclude from their federal adjusted gross income $70,000 of foreign earned income under section 911 of the Internal Revenue Code. Ultimately, the Director of Revenue decreased the Mladys' adjusted gross income on their Missouri return to match that reported on their federal return. Thus, the Mladys received the benefit of the federal foreign earned income exclusion in the form of a lower income for purposes of Missouri state income tax. To claim that the Mladys did not receive the benefit of the foreign earned income exclusion on their Missouri tax liability is incorrect.

As stated, the term abode is not defined in section 143.101.1. Words used by the General Assembly have the meaning by which they are commonly understood unless otherwise defined in the law. § 1.090, RSMo 2000; *Garland*, 961 S.W.2d at 827. An abode is a "place where one abides or dwells: HOME." Webster's Third New International Dictionary 4 (1993). Section 143.101.1 refers to an individual's

"permanent place of abode." As discussed in point one, the evidence showed that in 1996, Missouri was the place Mr. Mlady had his permanent home to which, whenever he was absent, he had the intention of returning and that Mr. Mlady's job assignment and living arrangements outside of Missouri in 1996 were temporary. He, therefore, did not maintain a permanent place of abode elsewhere. Point two is denied.

Based on the undisputed facts in this case, the AHC did not err in concluding that the Mladys were Missouri residents in 1996 for purposes of Missouri income tax. The decision of the AHC is affirmed.

LOWENSTEIN and HOLLIGER, JJ. concur.